[Crim. No. 2657.   First Dist., Div. One.   Sept. 20, 1950.]

THE PEOPLE, Respondent, v. LLOYD PORTER, Appellant.

Lloyd Porter, in pro. per., for Appellant.

Fred N. Howser, Attorney General, C. A. Linn and William M. Bennett, Deputy Attorneys General, for Respondent.

BRAY, J.—Defendant, appearing in propria persona as he did in the trial court, appeals from a judgment, after jury verdict, convicting him of the crime of violating section 476a of the Penal Code (issuing check without sufficient funds, with intent to defraud), and from the order denying his motion for a new trial.

## Contentions

1. Insufficiency of the evidence. 2. Error in admission of defendant's statements. 3. Court misled the jury concerning handwriting testimony. 4. Court refused to appoint a handwriting expert for defendant. 5. Court refused to permit defendant to take a lie detector test. 6. Error in instructions. 7. Prejudice of the court.

### 1. Evidence Sufficient

The chief basis of the contention that the evidence is insufficient to justify the verdict, is that the defendant's story, if believed, showed that he had no intent to defraud. However, the jury obviously did not believe his testimony, and did believe that of the prosecution. There was ample evidence to prove all the necessary elements of the crime, including intent to defraud. On Sunday afternoon, October 16, 1949, defendant Lloyd Porter entered the Rodeo Drug Store in Salinas and made a small purchase from the proprietor, John Fratini. Defendant offered in payment a check for $21. This check was dated the same day, drawn on the Salinas branch of the Bank of America, with Lloyd Porter as

payee and with Archibald Porter as maker. It was endorsed by Lloyd Porter. Defendant showed Fratini his driver's license and stated that Archibald Porter was his brother, and that the latter owed him the amount of the check for work defendant had performed for him. Thereupon Fratini cashed the check. Fratini took the check to the Salinas branch and found there was no account of the maker there. Thereupon he deposited it in the Monterey County Bank. Four days later the check came back endorsed "Unable to locate." About half an hour before defendant presented the check to Fratini a girl employee of the drug store gave defendant, at his request, two blank checks on the Bank of America. About two days later defendant cashed with the Valley Distributing Company in Salinas a check for $8.00 drawn on the same bank, in which Lloyd Porter was the payee and endorser and Archibald Porter was the maker. When he cashed this check defendant said that Archibald Porter was his uncle. This check came back "Refer to maker." An official of the Salinas branch of the Bank of America testified that an examination of the bank's records for approximately 10 years past revealed no account in either the name of Lloyd or Archibald Porter. On October 21, defendant was taken into custody and after questioning and unsuccessful attempts by the police to locate the brother, defendant admitted that he wrote the check and signed a written statement to that effect. Lieutenant of Police Roberts, who testified he knew defendant's handwriting, stated that the signature "Archibald Porter" was in defendant's handwriting. At the trial, defendant admitted cashing the check, but claimed that it was given him by his brother, and that in cashing it he had no intention of defrauding anyone, pointing out that he had given Fratini his true address, shown him his operator's license, and that, as he was on parole for a prior crime, he would not have taken the chance of committing a crime. He stated that he was unable to locate his brother. He also claimed that the oral and written statements made by him to the police were not freely or voluntarily given but given "under duress more or less." Several years back on a prior arrest he had received "some pretty rough treatment down there at the City Jail." This time the lieutenant of police shoved him on to a stool and told him when he signed the statement he could get up, and rather than take a beating defendant signed the statement. All of this was denied by the lieutenant and the other officers present. It is obvious that, again, the jury did not believe the defendant.

At the time of his arrest, defendant offered to pay the check. The arresting officer did not communicate this fact to the complaining witness. Defendant contends that this is positive proof of his lack of intent. Of course, offer of restitution or restitution itself is no defense to a prosecution under section 476a of the Penal Code (*People* v. *Weaver,* 96 Cal.App. 1 [274 P. 361]), nor for that matter is it necessary to show that the victim actually was defrauded. (*People* v. *Sherman,* 100 Cal.App. 587 [280 P. 708].) The effect of this offer to repay, as well as the other testimony of defendant on the question of intent, was a matter for jury determination. ''In the case of *People* v. *Walker,* 15 Cal.App. 400 [114 P. 1009], the court said that the intent with which a check is 'deposited' was a question exclusively for the jury; and the intent with which a person does an act may be inferred from all the surrounding circumstances.'' (*Ex parte Shackleford,* 64 Cal.App. 78, 81 [220 P. 430].)

### 2. ADMISSION OF DEFENDANT'S STATEMENTS

■ Defendant contends that they were not admissible because not freely and voluntarily made. As pointed out above, there was a conflict in the testimony and it was for the jury to resolve this conflict, which they did. The court fully instructed the jury on what constituted ''free and voluntary'' and even on the difference between admissions and confessions.

### 3. TESTIMONY ON HANDWRITING

■ On cross-examination of Lieutenant Roberts, defendant asked Roberts if he was a handwriting expert. Roberts replied, ''I wouldn't say a handwriting expert, no.'' Then the following occurred: ''BY MR. PORTER: Q. You wouldn't be qualified then to pass on that that was definitely the defendant's handwriting? A. I don't believe I was ever asked to do that. BY THE COURT: Q. But you saw his handwriting a great many times, is that right? A. Right. Q. And in your opinion, it is his handwriting? A. Yes. Q. And you told him so at the time? A. Right. Q. Have you changed your mind about it at all? A. No.''

Defendant contends that by this action the court told the jury that Roberts was a handwriting expert. The action of the court is not subject to such construction. The court was merely asking, as it had a right to do, for the opinion of one who had seen the handwriting many times. Section 1870, subdivision 9, of the Code of Civil Procedure provides: ''The

opinion of a witness respecting the . . . handwriting of a person, when he has knowledge of the . . . handwriting'' may be given. (See *People* v. *Bidleman,* 104 Cal. 608 [38 P. 502].)

Defendant now contends that Roberts' testimony as to his familiarity with defendant's handwriting was false. However, he did not question Roberts' statement at the trial and there is no evidence in the record upon which such claim of falsity can be based.

#### 4. REFUSAL TO APPOINT EXPERT

Defendant, testifying in his own behalf, after stating that he had never denied cashing the check but had denied cashing it with intent to defraud, stated: ''And what I would like more than anything else is to have the handwriting expert to examine that check and that hasn't been done by the prosecution.'' He then continued his testimony without pause. This is the only intimation at the trial that he desired a handwriting expert appointed. He now contends that this constituted a demand that the court have the check analyzed by a handwriting expert. It is plain that it did not constitute such a demand. Moreover, assuming it to be a demand, the language of the court in *People* v. *Conte,* 17 Cal.App. 771 [122 P. 450, 457], concerning a demand by defendant that a doctor who testified as to a rock used as a murder weapon but which no longer had visible blood stains on it, be required to analyze the rock for blood, is applicable here (p. 784) : ''. . . we are familiar with no law requiring the court under such circumstances to order the services of an expert witness in behalf of a defendant to be compensated for out of the public funds.''

#### 5. LIE DETECTOR

The same thing is true concernnig a request made by defendant in chambers at the conclusion of the testimony that the court submit him to a lie detector test. In *People* v. *Wochnick,* 98 Cal.App.2d 124 [219 P.2d 70], after an exhaustive review of the cases on the subject of lie detector tests as evidence, the court said (p. 128) : ''We are in accord with the views expressed in the foregoing cases that 'the systolic blood' pressure deception test for determining the truthfulness of testimony has not yet gained such standing and scientific recognition as to justify the admission of expert testimony deduced from tests made under such theory.' '' As the result of such a test would not have been admissible in evidence,

the defendant could not have been benefited by such a test, even if the court had the power to order it.

### 6. INSTRUCTIONS

█ Defendant states that the court "did unlawfully misinstruct the jury." The only specification of error is defendant's claim that the court instructed the jury on section 476 as well as 476a of the Penal Code. The court at no time instructed concerning the elements of the offense set forth in section 476 (uttering a fictitious check). It fully and fairly instructed on the elements of the offense set forth in section 476a, emphasizing the fact that for a conviction it was necessary that the intent to defraud be proved. The court did say, "It is no defense to the prosecution for making and uttering a *fictitious* check that after the check was passed, the defendant attempted to make restitution." (Emphasis added.) This sole reference to "fictitious check" did not constitute a charge under section 476, and if error, it was harmless, as it is obvious that the court was referring to the matter of restitution rather than to the type of crime. Defendant could be convicted of violating section 476a if the jury found the intent to defraud, whether it found that he actually wrote the maker's signature on the check, or passed it knowing that the maker (his brother) had no funds in or credit with the bank. We can find no error in the instructions.

### RECENT DEVELOPMENTS

Since defendant's conviction and this appeal was perfected, defendant has attempted to file with this court a letter which would indicate that the bank official was in error in testifying that defendant at no time had an account with the bank. This letter, of course, has no place in the record. Moreover, it is immaterial. It showed that defendant closed out his bank account on January 1, 1945. At the trial, defendant did not contend that he still had a bank account at the time he cashed the check. Moreover, he contended that the check was drawn by his brother on his brother's bank account. There was no such account.

### 7. PREJUDICE OF THE COURT

█ Defendant contends that he was tried by a prejudiced court. The only specification concerns the following incident: Defendant, while testifying, stated to the prosecuting attorney, Mr. Barron, that the latter had offered to "drop this charge to a misdemeanor for a County Jail sentence. Was that true?"

Barron replied, ''That was on His Honor's suggestion I went over to see him.'' Then the following occurred: ''THE WITNESS: Do you think for one minute that if I had of given that check there I would jeopardize myself to face 28 years which I could have got out for three or four months here maybe, or a year! Is that—does that sound reasonable? MR. BARRON: Your Honor—— THE COURT: Well this is kind of a difficult situation. MR. BARRON: It is Your Honor. BY THE COURT: Q. Of course, you knew, as a matter of fact, if you were convicted of a misdemeanor that your parole would be revoked and you would have to go back to prison, didn't you, when you made that statement that you wouldn't plead guilty? A. Yes, Your Honor, you want to remember that I could have plead guilty for that and when back on a minor violation, why, or just—— THE COURT: Well, you have answered the question. THE WITNESS: That—I have answered the question partly. THE COURT: You can argue that question to the jury. . . .'' Then Mr. Barron wanted to testify to the conversation he had with defendant. The court refused to permit him to do so. The action of the court shows no prejudice.

The judgment and order appealed from are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.