[Crim. No. 2617.    Third Dist.    Oct. 21, 1955.]

THE PEOPLE, Respondent, v. LLOYD RYAN
PORTER, Appellant.

Lloyd Ryan Porter, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Appellant was charged by information with the crime of forgery in violation of section 470 of the Penal Code. He entered a plea of not guilty, and was tried before a jury which rendered a verdict of guilty as charged in the information. His motion for a new trial was denied, judgment was pronounced against him and he has appealed from the judgment and from the order denying his motion for a new trial. Appellant was represented at the trial by counsel appointed by the court, but the notice of appeal and appellant's opening and closing briefs on appeal have been filed by appellant in propria persona.

Appellant urges a number of grounds for a reversal of the judgment and order, but before discussing them we shall give a brief summary of the evidence.

According to the testimony introduced by the People, a few days prior to May 4, 1954, appellant came to the used car lot of the firm of Singleton and Porter in Modesto and looked over the cars. On May 4, 1954, he returned and conversed with Mr. Porter, left again, and then returned the same day and talked with salesman Harry D. Parsons. Appellant said he was shopping for a car for his brother, who ran a truck from Salinas to Patterson, and, after examining a red 1947 Lincoln, said he would tell his brother about it. He then left. Later that afternoon Parsons received a telephone call from a man identifying himself as the brother of the man who had previously looked at the Lincoln automobile. This person asked various questions about the car and then said he would buy it. He instructed Parsons to deliver it to his brother, because he could not come in as he had a run to make from Patterson to Salinas, and he said he would give his brother a check for payment of the car. Later that day appellant again appeared at the used car lot and said he was buying the Lincoln for his brother and had brought a check from him, which he then tendered to Parsons. The check was complete then and was not made out in the presence of Parsons. The check was for $359.08, drawn to the order of Singleton and Porter upon the Salinas Branch, Bank of America, and signed F. F. Porter. Parsons made out the various transfer papers and turned the car over to defendant, who drove off with it. The purchase order was signed by appellant with the name F. F. Porter, although defendant did not say what the supposed brother's name was.

The check subsequently came back from the bank with the notation "Unable to locate at Salinas Branch." This bank had had no account since 1946 (that was as far back as the records were checked) in the name of F. F. Porter or Lloyd Ryan Porter or L. L. Porter or L. R. Porter, nor any credit arrangements with such persons. Appellant in the name of Lloyd R. Porter had had a checking account in that bank which had been closed in January of 1945, and the pass-book therefor was produced showing deposits in the neighborhood of $1,375 prior to 1945 with no listing of withdrawals.

Frank Archibald Porter testified that defendant Lloyd Ryan Porter was his only brother, and that he himself had never used any other name. He said he had not signed the check in question and had never authorized his brother or anyone else to sign his name to any document. He said he had never owned a Lincoln automobile and had never had any dealings

with Singleton and Porter. He stated that he had only one checking account, which was in a Compton bank, which was where he lived, and had never had any other checking account there or elsewhere.

An aunt of appellant testified that she knew him as Lloyd Ryan Porter and that he called at her home in early May, 1954, with a red Lincoln car, saying he had purchased it in Modesto with money from his wife.

A used-car salesman from Los Banos testified that on the 5th day of May, 1954, appellant entered into negotiations with him for the trade-in of the Lincoln automobile on the purchase of another car, and that appellant then used the name Lloyd F. Porter and said he had bought the car the day before in Modesto from Singleton and Porter. This witness said he checked with Singleton and Porter in Modesto and verified that appellant had bought the car the previous day. Any discrepancy between purchase of the Lincoln in the name of F. F. Porter and the next day's dealings in the name of Lloyd F. Porter was apparently not noticed or was ignored, and it was not explained. Appellant gave this firm two checks drawn on a Compton bank and signed them Lloyd F. Porter. One was for $410 and was in payment of the purchase of another car, delivery of which was held up for the check to clear, and the other was for about $50 to pay for repairs on the Lincoln. This witness said he then determined that appellant had no account in the Compton bank. The record shows only that the smaller check was returned unpaid. This witness also said that appellant stated he did not have funds enough in a checking account to cover the larger check and would arrange to cover it, but did represent that there were funds enough to cover the smaller check.

On the 5th day of May, 1954, appellant made a purchase from a merchant in Los Banos and gave a check signed Lloyd Porter. The check later came back unpaid.

A police officer from Modesto testified he arrested appellant in Montana in this case and that appellant was going by the name Jack Roland Porter and that appellant claimed an alibi for the day the check in question was passed in Modesto.

Appellant called two witnesses, his daughter and himself. The daughter testified on direct examination by appellant's counsel that about two weeks before the trial an investigator from the district attorney's office came to her home in Salinas and asked her for some papers containing appellant's signature that she had in her possession and that after he stated

that if she did not give them to him he would subpoena them, she gave to him two letters and five checks signed Lloyd Porter and Lloyd R. Porter, and a temporary operator's license issued to Lloyd Ryan Porter. These documents were evidently returned to the witness prior to the trial as appellant's counsel so stated when he was interrogating the witness. They were offered in evidence by the People during the cross-examination of the witness.

Appellant took the stand in his own behalf. He admitted two prior forgery convictions. He said he had used several other names than his real name because of his record. His story was that he went to the lot of Singleton and Porter shopping for a car on the 3d of May, 1954, and saw the Lincoln and discussed buying it, but that he told Parsons he would not have the money for several days. He said Parsons offered to hold the car if he would put up a deposit or if he would leave a check for it, which would be held by Parsons, so long as the appellant was sure of getting the money. Appellant said that he refused to do this. On the next day, however, he went back but left because Parsons was busy. He returned later in the day and agreed to buy the car as he had in the meantime telephoned his father-in-law and arranged to get the money from him. He and Parsons agreed that the latter would hold a check for the price until appellant got the money to cover it, and so he then wrote a check out at the lot for the car. This check was the one in question. Appellant said he did not represent that he was buying a car for his brother, or that he had a brother by the name of F. F. Porter, and that he used the name F. F. Porter as his own name in buying the car. He said he did not telephone the lot and represent himself as his brother or have anyone do so for him. He said he had no intention of defrauding anyone when he purchased the Lincoln car. Appellant said that on the 6th day of May, 1954, he got an advance of $400 from his father-in-law in San Francisco on a business venture in which he planned to use the car, and on the 7th he went with his wife to the lot of Singleton and Porter and paid Parsons the $359.08 due. In return he asked Parsons for the check but was told it was locked in a safe at the firm's main office, and so it was agreed the check would be mailed back. Appellant said that his copy of the purchase order was receipted by Parsons as paid in full.

On cross-examination appellant's copy of the purchase order

was identified and he admitted that it then contained no receipt written upon it. It was put into evidence by the People.

Rebuttal by the People followed in which witness Parsons denied appellant's version of the dealings at the used-car lot.

The pertinent part of section 470 of the Penal Code, which appellant was charged with violating, reads as follows:

"Every person who, with intent to defraud, signs the name of another person, or of a fictitious person, knowing he has no authority so to do, to, or falsely makes, alters, forges, or counterfeits any [enumerating various instruments such as checks, notes, deeds, etc.]; or utters, publishes, passes or attempts to pass, as true and genuine, any of the above-named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person; . . . is guilty of forgery."

Appellant contends that the People failed to prove his lack of authority to utter, publish or pass the check in question. However, the record shows clearly that F. F. Porter was a fictitious person and that appellant represented to automobile salesman Parsons that F. F. Porter was his brother and that the check was that of his brother, both of which statements were false. The issue of the reality or fictitiousness of F. F. Porter was thoroughly tried. Indeed, defendant's sole defense was that he signed the check "F. F. Porter" as his own name, a name he had been using for some time. It would be absurd to now say the proof was insufficient because the prosecution failed to prove lack of authority of defendant to sign the name of a *fictitious* person. ▪ The proof of lack of authority to sign the name of an actual person is necessary to prove the falsity of the instrument; if the person whose name is signed to the instrument is fictitious, proof of this fact is likewise proof of the falsity of the instrument. There was ample evidence from which the jury could conclude that F. F. Porter was a fictitious person conceived in the mind of appellant to aid him in defrauding.

Appellant contends also that the court erred in modifying an instruction offered by him. The instruction as modified and given by the court, with the court's addition bracketed, reads as follows:

"If from the evidence, you find that the defendant Lloyd Ryan Porter and F. F. Porter are one and the same person, and when he, 'Lloyd Ryan Porter' signed the check, 'F. F. Porter,' he signed it as his own name, [and did this in good

faith and not for the purpose of defrauding anyone in the transaction,] you must find the defendant not guilty of the offense charged in the complaint.''

■ Appellant contends that ''by adding the element of intent to defraud to the signing, or the use of the name 'F. F. Porter,' the court is then reducing the crime of forgery to one of two elements rather than three.'' He says that he might well have been guilty of violation of Penal Code, section 476a, but he was not guilty of forgery. There is no merit in this contention. The court correctly and fully instructed the jury as to the three essential elements of forgery: (1) Intent to defraud, (2) making a false instrument by signing another's name without authority or the name of a fictitious person, or knowingly uttering same, and (3) the instrument on its face be capable of defrauding someone who might act upon it as genuine or the person in whose name it is forged. The giving of the instruction modified by the court was perhaps unnecessary but certainly no prejudice could have resulted to appellant by adding the words ''and did this in good faith and not for the purpose of defrauding anyone in the transaction.''

Appellant next contends that the district attorney was guilty of prejudicial misconduct in the following instances:

(1) The district attorney asked defendant on cross-examination if he had been fired from a certain ranch job for firing a gun at somebody. Objection on the ground that this was beyond the scope of direct examination was upheld and the jury was told to disregard this testimony. (2) The district attorney also asked defendant about the receipt he had claimed was made out for payment of the check in question, and defendant said he kept it and it was the one he asked his attorney ''for to have you to sign your signature.'' The district attorney said he was not interested in what defendant told his office to do, but wanted a direct answer to his questions. No objection was raised by defense counsel. (3) Later on in this same cross-examination, defendant was asked certain immaterial questions in order to impeach him. The court on its own motion refused to allow the district attorney to continue, even though it was his stated purpose, given before the jury, to impeach the defendant, on the ground the matter was immaterial. No objection of misconduct was made as to any of these matters. ■ As respondent points out, defendant cannot raise these matters for the first time on appeal. (*People* v. *Amaya*, 40 Cal.2d 70, at 78 [251 P.2d 324].)

(4) Defendant also claims that during a recess the district attorney made slanderous remarks about him in the presence of the jury. This alleged conduct was not called to the attention of the court nor was any request made for an instruction to the jury to cure the effect of it, and it does not appear in the record, or by way of affidavit, although defendant claims he can get affidavits, except by self-serving remarks of defendant himself at his motion for a new trial; therefore, it cannot be considered on appeal. (*People* v. *Ruiz,* 103 Cal. App.2d 146 [229 P.2d 73] ; *People* v. *Graff,* 104 Cal.App.2d 32 [230 P.2d 654].)

Appellant next claims that evidence obtained by illegal search and seizure was obtained and introduced at the trial. The opening discussion herein concerning defense testimony, that of appellant's daughter, gives the facts upon which appellant relies. It is to be noted these various documents were identified upon direct examination, although put into evidence upon cross-examination with stipulation of appellant, and the witness said that she had not seen these papers since the investigator took them from her, although appellant's counsel had them at the trial, The inference seems to be that the district attorney returned them to defendant's counsel after looking them over. The witness said the investigator said he would subpoena them if she did not give them to him, and that she thereupon turned them over to him. Respondent contends there was no search or seizure in any sense of the words since they were given voluntarily by appellant's daughter. Appellant relies on the recent case of *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905], which was decided, of course, after the trial herein. Over objection, illegally obtained evidence was used to convict the appellant in the Cahan case, and the court overturned long standing precedents in ruling the evidence was inadmissible and granting defendant a new trial.

We do not believe that upon the record here there was any illegal search and seizure or that appellant was prejudiced by the introduction in evidence of the documents turned over to the district attorney's investigator by his daughter. All that the documents tended to show was that appellant used his true name of Lloyd R. Porter and there is no dispute in the record as to the fact that it was his true name, although he did state that he also used other names, including that of R. R. Porter. In the Cahan case the court pointed out that most of the ''incriminatory evidence'' against the defend-

ant was obtained illegally and that the conviction depended upon it.

Appellant contends further that he was convicted by other than a unanimous vote of the jury. There is no merit in this contention. After the jury returned with its verdict of guilty and it was read, the jury was polled at defendant's request. The reporter's transcript shows that each juror answered in the affirmative when asked if the verdict was his, except no answer is shown for Juror Thomas M. McKean. The clerk's transcript shows the minutes of the court contain the entry that the jury was polled and "all answered that the same was their verdict." The record does not show that any objection was made to the verdict after the polling, and the record does show that immediately following the polling of the jury the court ordered the clerk to record the verdict. We can be sure that the court would not have ordered the verdict recorded and the jury discharged if there had not been affirmative answers by all 12 jurors, and we can be sure also that appellant's counsel, who had just demanded that the jury be polled, would have made an objection to the entry of the verdict if all 12 jurors had not answered affirmatively. We agree with respondent that appellant waived any deficiency (if, indeed, there was any) in the polling of the jury by failing to make an objection at the time. See *People* v. *DeSoto,* 33 Cal.App.2d 478 [92 P.2d 466]. It may also be observed that appellant in arguing his motion for a new trial made no contention that all 12 jurors did not answer in the affirmative.

There is likewise no merit in appellant's further contention that he was denied due process under the Constitution of the State of California and the Constitution of the United States by reason of the fact that there was no grand jury investigation or indictment with respect to the offense of which he was charged and convicted. Appellant states that he demanded a grand jury investigation and that such demand was denied. The appellant's contention on this point is adequately refuted by the citation of a few of the many cases which have held that prosecution by preliminary examination and information does not violate any constitutional provisions and it is not requisite that a state prosecute by indictment only. (*Hurtado* v. *People,* 110 U.S. 516 [4 S.Ct. 111, 292, 28 L.Ed. 232] ; *People* v. *Sewell,* 95 Cal.App.2d 850 [214 P.2d 113].)

Appellant contends further that the trial court erred in admitting in evidence People's Exhibit No. 4, which was a

check for $410 signed by the appellant. He merely alleges that this evidence was irrelevant and immaterial and tended to prejudice the appellant's case in the eyes of the jury. The evidence was relevant to show that the appellant used the name Lloyd Porter in signing checks and not F. F. Porter. The record shows that at the time this exhibit was offered in evidence the court asked appellant's counsel if he had any objection to its introduction and counsel replied that he had no objection.

It has been repeatedly held that failure to object to the introduction of evidence at a trial constitutes a waiver and the appellant may not raise the question for the first time on appeal. (*People* v. *Bemis*, 33 Cal.2d 395 [202 P.2d 82]; *People* v. *Munoz*, 97 Cal.App.2d 432 [218 P.2d 122].)

Appellant contends also that the court erred in refusing to permit him to take a lie detector test. He alleges that he offered to take a lie detector test and introduce the results of such test in evidence at the trial, but that his offer was refused by the district attorney. This contention is without merit. It is settled in this state that the results of a lie detector test are not admissible in evidence in a criminal prosecution. (*People* v. *Porter*, 99 Cal.App.2d 506 [222 P.2d 151]; *People* v. *Wochnick*, 98 Cal.App.2d 124 [219 P.2d 70].)

Any statements except admissions against interest made by the appellant during the course of the lie detector examination would be clearly self-serving declarations and, hence, inadmissible. (*People* v. *Cullen*, 37 Cal.2d 614 [234 P.2d 1]; *People* v. *McNichol*, 100 Cal.App.2d 554 [224 P.2d 21]; *People* v. *Porter*, 99 Cal.App.2d 506 [222 P.2d 151.])

In his argument before the trial court in support of his motion for a new trial appellant contended that People's Exhibit No. 9, which was a purchaser's copy of the order for the Lincoln automobile, at one time had written upon it in ink a receipt showing that the appellant had paid cash for the balance due on the contract. The appellant argued that this receipt written on the face of the purchase order had been removed by erasure or chemical means. At the request of the appellant the trial court ordered that this exhibit be transmitted to the State Bureau of Criminal Identification and Investigation for analysis. This was done and when the document was returned to the court the report of the bureau showed that there was no evidence of any alteration either by erasure or chemical means with respect to any matter which might have been on the document.

Appellant now contends that the document was altered and that the court erred in denying his motion for a new trial, but it is obvious that there is no merit in this contention. It is apparent that the court gave appellant every opportunity to prove his contention but that he failed to do so. Certainly no showing was made that would justify us in holding that a new trial should have been granted upon the ground of newly discovered evidence.

Because of the fact that appellant, who is not a lawyer, filed his briefs in propria persona we have discussed his numerous contentions at greater length than was justified by their almost obvious lack of merit. We are convinced that the appellant received a fair trial, was ably defended, that the evidence of his guilt was overwhelming and that no prejudicial error was committed.

The judgment and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.