Filed 5/13/14  Humphrey v. Bank of America CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

|  |  |
|---|---|
| ETHEL HUMPHREY, Individually and as Trustee, etc.,<br><br>        Plaintiff, Cross-Defendant and Appellant,<br><br>        v.<br><br>BANK OF AMERICA, N.A., as Successor in Interest, etc.,<br><br>        Defendant, Cross-Complainant and Respondent. | D062833<br><br><br>(Super. Ct. No. 37-2010-00100476-CU-OR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Law Offices of Courtney M. Coates and Courtney M. Coates for Plaintiff, Cross-Defendant and Appellant.

Andersen Hilbert & Parker, David M. Parker and Joseph A. LeVota for Defendant, Cross-Complainant and Respondent.

INTRODUCTION

Ethel Humphrey (Ethel) appeals a summary judgment granted in favor of Bank of America, N.A. (BAC) declaring it is entitled to enforce a deed of trust as a bona fide encumbrancer. Ethel argues the trust deed is void *ab initio* because an individual named Jeremy Bernard Heard executed it as "JB Herd."[1] Ethel asserts this is a fictitious name, which renders the document an unenforceable forgery. We affirm the judgment because we conclude Ethel did not present evidence of forgery to preclude application of the bona fide encumbrancer doctrine.

FACTUAL AND PROCEDURAL BACKGROUND

A

*Property Transfers*

Ethel and her sister Noreen Humphrey (Noreen)[2] resided in a family home located at 4042-4044 National Avenue in San Diego for over 40 years. Noreen acquired ownership of the property in February 2002, after it sustained fire damage.

The sisters hired the Alpha Project for the Homeless (Alpha Project) to repair the fire damage. The Alpha Project recorded a mechanics lien against the property in January 2004 after a dispute arose regarding money owed for the reconstruction.

---

[1]   As discussed in section C *post*, the individual known to Ethel as *J.B. Herd* also used variations of the names *Jeremy Bernard Heard* and *J.B. Heard*. We generally refer to this individual as Heard unless otherwise indicated.

[2]   Because they share the same surname, we refer to the Humphrey sisters by their first names for clarity. We intend no disrespect.

Noreen looked into obtaining a home equity loan from an institutional lender, but turned to alternative sources of funds because the rates were high. She met a man from a non-profit organization, The Good Samaritan Society (Good Samaritan), who identified himself as *J.B. Herd*.

Good Samaritan agreed to pay off the mechanic's lien and some of Noreen's personal debts in exchange for title in the property. According to Ethel, Good Samaritan agreed to transfer the property back to Noreen when the loan was repaid.

Escrow opened in May 2004 for Good Samaritan to obtain a loan secured by the property. During escrow, the title agent requested a correction deed to make clear Good Samaritan would be the sole owner of the property at the close of escrow. Noreen signed the grant deed in June 2004 granting title of the property to Good Samaritan. Ethel was present when Noreen signed the deed and Ethel made a handwritten notation stating, "To clear title for loan purposes."[3]

Good Samaritan's grant deed was recorded on July 2, 2004, along with a deed of trust encumbering the property in favor of Bruno and Beatrice Del Bianco to secure repayment of a loan for $450,000. Part of the loan proceeds were used to obtain a release

---

[3]     In the opening brief, Ethel asserts Noreen's signature on title documents between Noreen and Good Samaritan are forgeries, with the exception of one. We do not consider this assertion because the court sustained objections to the portion of Ethel's declaration claiming the June 2004 document does not bear Noreen's signature. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [we do not consider evidence to which objections have been made and sustained in reviewing a summary judgment motion].) Ethel does not challenge the court's evidentiary rulings on appeal. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [the court is not required to consider issues that are not argued or supported by citation to the record or legal authority].)

of Alpha Project's mechanic's lien and to pay some personal debts of Noreen and her brothers. Another $135,000 was held back for construction on the property. Construction continued on the property over the next year.

In July 2005, Heard acquired title to the property through a grant deed from Good Samaritan. He obtained a loan from American Sterling Bank, BAC's predecessor, for $540,000, which was secured by a deed of trust on the property.[4] A notary public notarized the deed of trust declaring "JB Herd" personally appeared and was either personally known or proved on the basis of satisfactory evidence to be the person whose name was subscribed on the instrument.

The bulk of the BAC loan proceeds went to retire the Del Bianco loan and to ensure the BAC trust deed occupied a first priority position against the property. BAC was not aware of an agreement between Noreen and Good Samaritan to return title of the property upon repayment of loan or of any challenge to Good Samaritan's title to the property. BAC would not have issued the loan if it had been aware of such a non-recorded agreement.

Noreen passed away in July 2005. Within a few days, Ethel discovered a check made payable to Heard, which was sent to the property for excess net proceeds from the loan. Ethel became suspicious of Heard and notified an attorney about the check.

---

[4]     Countrywide Home Loans (Countrywide) acquired the loan from American Sterling Bank. Thereafter BAC acquired Countrywide and the beneficial interest in the loan at issue. For ease of reference, we refer to the loan at issue as the "BAC loan" and "BAC" to refer to BAC, American Sterling Bank and/or Countrywide.

Heard told Ethel he owned the property because he had the deed. For a time, he evicted her from the property. Ethel made several payments on the BAC loan to avoid foreclosure. The loan went into default after both Heard and Ethel stopped making payments. Ethel, who apparently returned to the property after eviction, continues to reside on the property.

B

*Civil Action Against Good Samaritan and Heard*

In 2006, Noreen's estate sued Good Samaritan and Heard in a civil lawsuit entitled *Smith v. Good Samaritan Society et al.,* (Super. Ct. San Diego County, 2006, No. GIC869116) (*Smith* Action). The estate asserted causes of action for quiet title, cancellation of cloud of title, relief based on rescission, fraud, declaratory relief, conspiracy, breach of fiduciary duty and conversion based upon the transfer of title from Good Samaritan.[5]

After a bench trial in June 2009, the court found in favor of plaintiff on the fraud cause of action "based on the purported issuance of the loan for which no proceeds [were] given and instead the property being in essence taken for no consideration." The court

_____

[5]     BAC lodged with the trial court the complaint in the *Smith* Action and requested judicial notice of this document along with others. Ethel lodged the judgment filed in that case. Ethel also lodged a copy of our nonpublished decision in the matter of *People v. Heard* (June 18, 2010, D054669) [nonpub. opn.]. The court did not rule on BAC's request for judicial notice, but no party objected to the lodgments. Therefore, pursuant to Evidence Code sections 452, subdivision (d), and 459, subdivision (a), we take judicial notice of these court records on our own motion. (*Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 37, fn. 2.)

granted rescission and set aside the series of grant deeds and quitclaim deeds involving transfer of the property between Noreen, Good Samaritan and Heard. The court restored ownership of the property to Ethel, as the personal representative of Noreen's estate. The court also awarded $540,000 in monetary damages.

The judgment (entered two years after the bench trial) declared, "Defendants J. B. Herd, J. B. Heard, Jeremy Barnard Heard, Equity Holding Corporation, the Good Samaritan Society, and Stephany Reese, and, *other than Sterling Bank and Bank of America,* all Persons Unknown, Claiming any Legal or Equitable Right, Title, Estate, Lien, or Interest in the Property are deemed not to have and never to have had any legal or equitable interest in the Property and that their purported interests in the property were procured by fraud, conspiracy to commit fraud, breach of fiduciary duty, and conversion." (Italics added.)

The judgment also declared, "*BAC Home Loans Servicing, LP and American Sterling Bank are not bound by any judgment in this case* at this time, or any successors or others claiming a beneficial or trustee interest in the property under the deed of trust originally recorded on July 13, 2005, as Document No. 2005-0589078." (Italics added.) The judgment authorized Humphrey "to deal with [BAC] regarding the outstanding loan on the [p]roperty."

## C

*Heard's Criminal Conviction for Perjury*

In 2009, a jury found Heard guilty of perjury for falsely answering questions under oath on a Department of Motor Vehicles (DMV) application for a replacement driver

6

license. In response to questions about whether he ever applied for or had been issued a driver license or identification card with another name, Heard falsely answered "no."

Heard's use of two names came to the attention of the DMV in 2007 when a San Diego police detective reported an encounter with an individual who appeared to have two identities, *J.B. Heard* and *J.B. Herd*, each associated with a different DMV permanent record number.

According to the prosecution's evidence, Heard's birth certificate states his name is *J.B. Herd* and he was born on February *1*, 1952. In 1967, he applied for a Social Security number stating his name was *J.B. Heard* and his date of birth was February *2*, 1952. In 1986, Heard applied for and received a second Social Security number under the name *Jeremy Barnard Herd* with February *1*, 1952 as the date of birth. Thereafter, Heard obtained driver's licenses, replacement and renewed licenses, an identification card and replacement social security cards under variations of both names with both dates of birth.

Heard did not dispute his use of both names, but presented evidence that some of his relatives use the surname *Herd* while other family members use the surname *Heard*. At the conclusion of the criminal proceedings in 2009, Heard stated his true last name is Heard and the court ordered him to refrain from using any other surname.

In affirming Heard's perjury conviction, we rejected Heard's suggestion the DMV should have noticed the discrepancy in the names and concluded, "a trier of fact could not reasonably infer [a check of his application information against a name index] would have revealed Heard's dual identities given the differences in the birth date, Social Security number, and address information associated with each identity."

7

# D

## *Civil Action Against BAC*

Ethel and the representative of Noreen's estate commenced this action against BAC in 2010 seeking (1) an injunction to prevent BAC from foreclosing on the property and (2) declaratory relief asserting BAC's deed of trust is void and invalid. BAC cross-complained seeking declaratory relief and quiet title asserting it is a bona fide encumbrancer entitled to enforce its deed of trust.[6]

BAC moved for summary judgment as to both the operative complaint and the cross-complaint. BAC argued an injunction is not an independent cause of action. It also argued Ethel is not entitled to declaratory relief (but BAC is entitled to such relief) because it is a bona fide encumbrancer acting in good faith and for value after it received a lien or encumbrance on the property without knowledge or notice of competing claims.

BAC presented evidence regarding the chain of title transferring the property from Noreen to Good Samaritan and reflecting the Del Bianco deed of trust, which encumbered the property as security for their loan. It presented evidence the loan proceeds were used to obtain a release of the Alpha Project's mechanic's lien and to pay certain debts of Noreen and her brothers as well as to obtain a construction loan for the property.

---

[6] The parties stipulated to substitute Ethel as the trustee for Noreen's estate in place of the prior representative. Thereafter, Ethel filed an amended complaint asserting the same causes of action for injunctive and declaratory relief.

BAC also presented evidence of its loan to Heard for the purchase of the property from Good Samaritan. This included escrow documents showing record title vested in Good Samaritan and the use of the proceeds of the BAC loan to pay off the Del Bianco loan before the recordation of a grant deed conveying the property from Good Samaritan to Heard and BAC's trust deed. Finally, BAC presented evidence it was not aware of any challenge to Good Samaritan's title to the property before the BAC loan closed.

In opposition, Ethel argued BAC cannot assert a valid claim as a bona fide encumbrancer because the trust deed, the grant deed and the BAC note bear the fictitious name *JB Herd*, which Ethel contended constitutes a forgery and renders the relevant title documents void *ab initio*. Ethel also argued BAC's predecessor had constructive notice of title defects because there were seven deed transfers within a one-year period. She contended it should have investigated and discovered Heard's use of the false name.

Ethel lodged the judgment in the *Smith* Action and a copy of our decision in *People v. Heard*, *supra*, D054669. Ethel submitted her own declaration and a declaration of an investigator for a debt collection agency opining a search of Heard's credit history would have revealed his use of different names. Ethel also submitted declarations from Noreen's brothers Gary and Grover Thomas stating they did not sign various documents in connection with the initial loan from Good Samaritan.[7]

---

7    The court sustained BAC's objections to Ethel's declaration and the opinion of the debt collection investigator. It overruled objections to the declarations of the brothers. Ethel does not challenge the evidentiary rulings on appeal.

The court granted summary judgment in favor of BAC finding BAC met its burden to demonstrate it is a bona fide encumbrancer and Ethel "offered no evidence that [Heard's] execution of title documents under the name J.B. Herd was done with the intent to defraud or otherwise constitutes a forgery."  The court also rejected Ethel's contention BAC's predecessor was obligated to research Heard's names noting "the absence of any authority or evidence to suggest the Defendant was obligated to do anything more than was performed by Defendant's predecessor and/or that such research would have resulted in a different outcome."

DISCUSSION

I

*Standard of Review*

A defendant is entitled to summary judgment if it establishes a complete defense to the plaintiff's cause of action or shows that one or more elements of the cause of action cannot be established.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

Because a motion for summary judgment raises only questions of law, we independently review the parties' supporting and opposing papers and apply the same standard as the trial court to determine whether there exists a triable issue of material fact. (*City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 582; *Southern Cal. Rapid Transit Dist. v. Superior Court* (1994) 30 Cal.App.4th 713, 723.)  First, we analyze the pleadings.  Since the pleadings delimit the issues to be considered on a motion for summary judgment, a defendant need only address the allegations raised in the complaint.

(*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064.) Second, we determine if the defendant met its burden of showing the cause of action has no merit either because one or more elements of the cause of action cannot be established or because there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Third, if the defendant has met its burden, the burden shifts to the plaintiff to show a triable, material controversy as to whatever element of the cause of action defendant claims is not established. (*Ibid*.)

We liberally construe the evidence in support of the party opposing summary judgment (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142), and assess whether the evidence would, if credited, permit the trier of fact to find in favor of the party opposing summary judgment under the applicable legal standards. (Cf. *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.)

II

*BAC is a Bona Fide Encumbrancer*

"A 'bona fide encumbrancer' is an encumbrancer acting in good faith and for value who receives a lien or encumbrance on real property . . . without knowledge or notice of competing liens on the same property, and who has parted with something of value in consideration for the encumbrance." (5 Miller & Starr, Cal. Real Estate (3d ed. 2009) § 11:50 citing *Caito v. United California Bank* (1978) 20 Cal.3d 694, 701-702 (*Caito*).)

An encumbrancer who records his interest in the property is protected against undisclosed liens and equities (*Caito*, *supra*, 20 Cal.3d at p. 702) and receives the interest in the property "free and clear of all prior unrecorded claims in the property which are

11

unknown to him."  (*Reiner v. Danial* (1989) 211 Cal.App.3d 682, 689-690.)  The Supreme Court explained in *Caito,* "[p]olicy runs against upholding secret liens and charges to the injury of subsequent innocent encumbrancers. [Citation.] Inquiry does not become a duty when apparent possession is consistent with title appearing of record." (*Caito*, *supra*, 20 Cal.3d at p. 702.)  The encumbrancer's status is determined at the time the interest or lien is acquired.  Any information acquired later is irrelevant.  (*Reiner v. Daniel*, *supra*, at p. 690.)

In this case, it is undisputed BAC loaned Heard $540,000 and recorded its trust deed against the property as security for its loan.  During escrow for Heard's purchase of the property from Good Samaritan, BAC became aware of the deed of trust held by the Del Biancos to secure their loan to Good Samaritan.  The bulk of the BAC loan proceeds were used to retire the Del Bianco loan and deed of trust to ensure BAC occupied a first priority position against the property.  At the time BAC issued the loan, it had no knowledge or notice of any claim by Noreen to the property or of any challenge to the validity of Good Samaritan's title to the property.  Ethel produced no evidence to the contrary.  Thus, BAC is a bona fide encumbrancer.

12

## III

### *There is No Evidence of Forgery to Preclude Application of the Bona Fide Encumbrancer Doctrine*

Ethel's sole argument on appeal is that BAC cannot rely on the doctrine of bona fide encumbrancer because Heard's use of the name "JB Herd" on BAC's deed of trust constituted a forgery and renders the instrument void *ab initio*.[8]  We are not persuaded.

### A

"A deed is void if the grantor's signature is forged or if the grantor is unaware of the nature of what he or she is signing.  [Citation.]  A voidable deed, on the other hand, is one where the grantor is aware of what he or she is executing, but has been induced to do so through fraudulent misrepresentations."  (*Schiavon v. Arnaudo Brothers* (2000) 84 Cal.App.4th 374, 378 (*Schiavon*).)

A person is guilty of forgery if he or she "with the intent to defraud, knowing that he or she has no authority to do so, signs the name of another person or of a fictitious person" to certain written instruments, including promissory notes, contracts and instruments to convey property.  (Pen. Code, § 470, subds. (a) & (d).)  In other words,

---

8      In the introduction to the opening brief Ethel asserts the court "ignored triable issues of fact as whether [BAC] was placed on inquiry notice of the specious, multiple conveyances of the same property over a short one-year period" as well as triable issues as to whether BAC was on inquiry notice of Heard's false identity.  However, the opening brief provides no argument, authority or citation to the record to support these assertions and we do not consider them.  (*Kim v. Sumitomo Bank*, *supra*, 17 Cal.App.4th at p. 979 [the court is not required to consider issues that are not argued or supported by citation to the record or legal authority].)

"[a] forgery is a ' "writing which falsely purports to be the writing of another," ' and is executed with the intent to defraud." (*Schiavon*, *supra*, 84 Cal.App.4th at p. 382.)

Ethel argues the July 2005 documents (grant deed, deed of trust, and adjustable rate note) "all contain a *false or fictitious* name of 'J.B. Herd.' That fictitious name was used with the intent to defraud [BAC] and [Ethel]." She relies on cases involving forgery by the use of entirely fictitious names. In *People v. Porter* (1955) 136 Cal.App.2d 461, the defendant was convicted of forgery for purchasing a car by signing a check "F.F. Porter" when no such person existed and no bank account existed under that name. (*Id*. at pp. 463, 466.) While the defendant asserted he had used the name F.F. Porter as his own, the court concluded there was ample evidence for the jury to conclude this was "a fictitious person conceived in the mind of appellant to aid him in defrauding." (*Id*. at p. 466.)

In *Wutzke v. Bill Reid Painting Service Inc.*, (1984) 151 Cal.App.3d 36, 39 a seller sold a parcel of property to purchasers Sterling and Joan Miller. The seller received a down payment and a promissory note secured by a first deed of trust naming as trustee a company owned by the Millers (unbeknownst to the seller). Using the names "Howard Perry" and "Caroline Wilson," Sterling Miller executed and recorded a deed of reconveyance falsely representing all sums secured by the deed of trust had been paid and transferring the property to himself and his wife. (*Ibid*.) The court held the deed of reconveyance was void as a forgery not only because Miller was unauthorized to sign the document, but also because he signed the document using fictitious names. (*Id*. at pp. 41-42.)

14

These cases are not applicable to the facts presented here. Ethel presented no evidence Heard's signature on BAC's deed of trust as *JB Herd* was the " 'writing of another' " or that he used this name with an intent to defraud the lender. (*Schiavon*, *supra*, 84 Cal.App.4th at p. 382.)

"It is the settled law of this state that a person may assume any name in which to receive title to property and that if he assumes such a name a conveyance by him under such assumed name passes a good title [citations] . . . 'It is involved in the very conception of a deed that there must be a grantee to whom delivery is made, and in whom title can vest. If there be no grantee, and the deed is to a mere fictitious name, it is obvious that it is a nullity. But if there be a person in existence and identified and delivery is made to him, it makes no difference what name he is called. He may assume a name for the occasion, and a conveyance to and by him will pass title.' " (*Knaugh v. Baender* (1927) 84 Cal.App. 142, 148.)

Heard existed. Although he used two identities at the time he signed these instruments in 2005, there is no evidence in the record his signature on BAC's deed of trust purported to be the " 'writing of another.' " (*Wutzke v. Bill Reid Painting Service, Inc.*, *supra*, 151 Cal.App.3d at p. 42.) According to the certificate of the notary public who notarized BAC's deed of trust, Heard was either personally known to the notary or "proved to me on the basis of satisfactory evidence" to be the person whose name was subscribed on the document. Heard had a birth certificate, a social security number and driver license under the name *J.B. Herd*. Heard presented evidence during his criminal trial his family used both surnames.

15

The evidence only shows Heard took the property and executed the BAC deed of trust using a variation of his name, one he used at the time. The court did not order Heard to refrain from using any other surname until the close of the criminal proceedings in 2009, well after the execution of the instruments at issue. Ethel presented no evidence Heard's use of a different formulation of his name on the documents at issue was a ruse or an attempt to escape his obligations.

B

Ethel argues the documents executed as "JB Herd" in 2005 should be deemed forgeries by implication because (1) Heard was found civilly liable for fraud based upon his conduct surrounding the transfer of property from Noreen to Good Samaritan in 2002 and (2) he was subsequently convicted of perjury related to the use of his aliases. We disagree.

For the first point, Ethel relies on an excerpted quotation from *People v. Lustman* (1970) 13 Cal.App.3d 278, disapproved on other grounds in *People v. Ruster* (1976) 16 Cal.3d 690. In that case, the court upheld convictions under Penal Code section 470 for forgery because the defendant assumed a fictitious name to obtain aid checks from another state. The defendant argued he could not have signed the checks with an intent to defraud because the fraud had already occurred when he caused the state to issue the checks based on his false representations. (*Lustman*, *supra*, at pp. 281, 288-289.) In rejecting this argument, the court stated, " ' "while one may sign a fictitious name which he has adopted for innocent purposes without being guilty of forgery, and while an assumption of a name generally for purposes of fraud is not sufficient to convict of

16

forgery unless in the particular case fraud is shown in using the name, yet, if such fraud is shown, the fact that the name had been previously assumed by the one signing it, *and used for purposes of fraud generally*, with no reference to the particular fraud, will not prevent the signature being a forgery; one cannot acquire a right to use a name not his own for fraudulent purposes, by using it any number of times previously for such purposes." ' "  (*Id.* at p. 289, italics added.)

The complete quotation supports our conclusion there must be some evidence an alias had been used for the purpose of fraud before a court may imply the use of the name on a document constitutes an intent to defraud to render a document a forgery.  A showing of general fraud without some nexus between the use of the alias and fraudulent conduct is not sufficient to support a finding of forgery.  In *Lustman*, there was such a connection.  The defendant assumed a fictitious name to induce a state to issue aid checks, then he signed and passed the checks to obtain money he was not entitled to receive.  This evidence was sufficient to show the defendant used the name with an intent to defraud and supported the forgery conviction.  (*People v. Lustman, supra,* 13 Cal.App.3d at p. 289.)

In this case, Ethel contends Heard represented himself as *J.B. Herd* and he was subsequently found liable for fraud.  However, she did not present evidence Heard used his alias with an intent to defraud Noreen.  In the civil action against Heard and Good Samaritan, the court found them liable for fraud based on "the purported issuance of the loan for which no proceeds [were] given and instead the property being in essence taken for no consideration."  Therefore, while the court found Heard and Good Samaritan

17

fraudulently induced Noreen to execute the grant deed to Good Samaritan, there is no indication Heard's alias played a role in the fraud.

Further, BAC cannot be precluded from relying on the chain of title as it existed in 2005 based on a later court declaration that the Good Samaritan deed is void. Noreen's fraudulent inducement to execute the deed to Good Samaritan rendered the Good Samaritan deed merely voidable, not void *ab initio*. (*Schiavon*, *supra*, 84 Cal.App.4th at p. 378 ["A voidable deed . . . is one where the grantor is aware of what he or she is executing, but has been induced to do so through fraudulent misrepresentations"]; *Fallon v. Triangle Management Services, Inc.* (1985) 169 Cal.App.3d 1103, 1106 ["If a grantor is aware that the instrument he is executing is a deed and that it will convey his title, but is induced to sign and deliver by fraudulent misrepresentations or undue influence, the deed is voidable and can be relied upon and enforced by a bona fide purchaser"].)

This is similar to *Fallon* where a bona fide encumbrancer was entitled to enforce a right to property even though another court judgment declared an original deed void. (*Fallon v. Triangle Management Services, Inc.*, *supra*, 169 Cal.App.3d at pp. 1105-1106.) The *Fallon* court explained a voidable deed is fully operative until it is declared void. (*Id.* at p. 1106.) The deed from Noreen to Good Samaritan was not void when it was executed and recorded in 2004. It was fully operative when BAC recorded its deed of trust and paid off the Del Bianco loan in 2005. Therefore, BAC is permitted to rely upon the chain of title as of that time as a bona fide encumbrancer.

Heard's subsequent perjury conviction likewise does not establish the BAC deed of trust was a forgery. First, Ethel asserts Heard was convicted for use of the alias *JB*

18

*Herd.*  This is incorrect.  Heard was convicted of falsely answering questions on a DMV application for a replacement driver license under the name *J.B. Heard.*  Second, as already discussed, the perjury conviction was based on an untruthful answer, given under penalty of perjury, regarding whether Heard had ever sought a DMV license or identification under another name.  While the circumstances surrounding the use of Heard's names are unusual, and perhaps suspicious, there is no evidence either from this record or the prior criminal case that Heard assumed the name *JB Herd* for fraudulent purposes.  Therefore, there is no basis to find Heard's execution of the documents as "JB Herd" constituted forgery.

Although we do not condone Heard's conduct, Ethel did not present evidence Heard forged the BAC deed of trust with an intent to defraud.  Therefore, BAC's deed of trust is not void *ab initio* and BAC may enforce it as a bona fide encumbrancer.  Given our decision, we do not reach the alternative defenses raised by BAC.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

McCONNELL, P. J.

WE CONCUR:

AARON, J.

IRION, J.

19