[Crim. No. 65. Fifth Dist. July 2, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. LLOYD RYAN PORTER, Defendant and Appellant.

Lloyd Ryan Porter, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edward A. Hinz, Jr., Deputy Attorney General, for Plaintiff and Respondent.

BROWN (R. M.), J.—Appellant, appearing in propria persona, as he did in the trial court, having revoked his own request for counsel, appeals from a judgment after a jury verdict convicting him of the crime of violating section 476a of the Penal Code (issuing a check without sufficient funds with intent to defraud) and from the order denying his motion for a new trial. (An order denying a new trial in a criminal case is no longer appealable (Pen. Code, § 1237) but may be reviewed on appeal from the judgment (*People* v. *Lessard,* 58 Cal.2d 447 [25 Cal.Rptr. 78, 375 P.2d 46]).) Appellant, at the time of his not guilty plea, admitted a prior conviction of a violation in 1955 of section 470 of the Penal Code.*

A summary of the evidence before the discussion of the appellant's grounds for a reversal of the judgment, shows that on November 19, 1961, appellant paid a $49 bill owed to E. C. Vowell of Waterford, California, by giving him a $100 check payable to the appellant dated November 18, 1961, and signed "Rosa M. Porter" and drawn on a Merced bank, receiving in change $51 in cash; he cashed a similar $25 check dated November 18, 1961, made payable to appellant, signed "Rosa M. Porter" and drawn on a Turlock bank; also, at a grocery store he gave the proprietor a $61 check dated November 18, 1961, made payable to appellant, signed "Rosa M. Porter," drawn on the same Merced bank, made a small purchase and received the balance in cash. There were no such accounts in these banks in the name of Rosa M. Porter.

On November 21, 1961, appellant and his wife and stepdaughter left Waterford for Oklahoma. In the following July he was apprehended in Oklahoma and returned to California.

---

*People* v. *Porter,* 136 Cal.App.2d 461 [288 P.2d 561].

Summarizing appellant's testimony, he stated that he went to Downey, California, to get a loan from his brother, that he did not get along very well with his sister-in-law, Rosa Mae Porter, who wouldn't loan him any money, that on the way back to Waterford, California, he asked his wife if she got some money from Rosa and his wife said, "Yes, I got it." After arriving at Waterford that evening his wife handed him the $25 check to get cashed so they could do some laundry at the laundromat and he cashed the check at a beer tavern. When his wife gave him the check she stated that it was from Rosa. That same evening she handed him the other two checks after he told her he had to pay some bills and at that time they talked about going to Oklahoma to see her daughter-in-law who was very ill; that same evening he took the $100 check and gave it to Mr. Vowell, endorsing it on the back, and receiving the balance from a bill which he owed in cash; then he went over to the Quality Market where he cashed the third check. At about 3 a.m. on November 21, 1961, he decided to go to Oklahoma to see his wife's daughter-in-law in the hospital. After remaining in Oklahoma for some time and on advising his wife that he was going back to California, his wife said, "You can't go back because those checks wasn't any good." On May 6, 1962, he separated from his wife and her present address is unknown. He was picked up in July 1962 in Oklahoma, and he testified that he had too much to lose to give anyone $150 worth of checks "to have been sitting here now"; that he did not recognize the handwriting on the checks, that the handwriting was not that of his wife nor of his wife's daughter.

In the trial it was stipulated that the handwriting on the face of the three checks was not that of the appellant but that the appellant had endorsed each check.

Rosa Mae Porter, of Downey, California, was examined conditionally under order of the court due to an illness, at which examination appellant was present, and she testified that she does not sign her name "Rosa M. Porter" but signs it "Rosa Mae Porter"; that she had not seen the checks before, that they were not signed by her; that she at no time ever had bank accounts in the Merced or Turlock banks on which the checks were drawn but only had an account at the Home Bank in Compton; that she had no credit arrangements with any other banks nor did she deal with any other banks except to make a payment at the Bank of America in South Gate, California; that she knew the appellant; that she had never

given him or anyone either written or oral permission to sign her name to checks; that she did not recognize the handwriting on the checks.

Appellant urges on his appeal that the trial court erred in rejecting material evidence, erred in refusing and repeating instructions; that the clerk lacked efficiency and diligence and committed error in not immediately issuing subpoenas and not showing return of service on persons appellant had requested as witnesses, and that the verdict was contrary to the evidence.

### Clerk's Lack of Diligence in Issuing Subpoenas

On October 11, 1962, the court ordered the trial reset for October 23rd and on October 15th or 16th the appellant requested the clerk to serve subpoenas on a Mr. Hastings and a Mr. Wheat. On the first day of trial the appellant indicated that he was ready to proceed and made no statements with regard to any witnesses, but after the prosecution had rested its case the appellant called for Mr. Hastings and subsequently for Mr. Wheat. The sheriff reported that subpoenas had not been served on these witnesses as Mr. Hastings' address given to him by the appellant was unknown and Mr. Wheat was hunting in Colorado and would not shortly return. The appellant's offer of proof claimed that Mr. Hastings, a former service station employee of Mr. Vowell, was present when the check was cashed and that he would disprove Mr. Vowell's testimony that the appellant had stated that he had received the check from someone in Merced and that the appellant had not mentioned "Merced," but only "Downey." However, the appellant finally stated, "I am going to forget Hastings" but that he wanted Mr. Wheat "to prove that I was in the Waterford area . . . the weekend before that I went to Downey" and that he had made certain statements to Mr. Wheat that "I was going down there to borrow some extra money." The court then asked him if he wanted a continuance and he requested a one-day continuance, but the court granted a five-day continuance. Mr. Wheat's correct address was obtained, though Mr. Wheat was still on a hunting trip and a further attempted service on October 27th was unsuccessful.

On October 29th when the trial resumed, Mr. Wheat not having been served, the appellant made no request for further continuance and advised the court that he was ready to proceed.

It is appellant's contention that Mr. Wheat was a key wit-

ness for his defense and due to the lack of efficiency in the clerk's office and sheriff's office he went into trial thinking that all of his witnesses had been subpoenaed and since they had not been subpoenaed, he was thus denied due process.

There was no error or prejudice to the appellant by the failure to subpoena these witnesses. Their testimony was not material and at the most, was cumulative in that the appellant himself testified that he had cashed the check at Mr. Vowell's service station and that he was also going down south to borrow some money. The fact that he went to Downey was immaterial to the elements of the offense. The appellant's brother, of Downey, California, testified that appellant had been in Downey and had asked him for a loan at approximately the same time appellant stated he was there. The case of *People* v. *Lamb*, 133 Cal.App.2d 179, 184, 185 [283 P.2d 727], puts such an issue in the proper perspective.

### Rejection of Material Evidence

 Appellant contends that the court erred in not admitting Exhibit A, which was a recommendation previously signed by the complaining witness, Mr. Vowell, dated September 18, 1961, stating that appellant had traded with Mr. Vowell, that his bills had been paid without being overdue, that his credit reference was good at his place of business. While in the first trial of appellant which ended in a hung jury, this exhibit was accepted, it was properly rejected in the second trial. The exhibit was not relevant to the appellant's defense and in no way proved that he had credit to cash the $100 check or that he had received it from his sister-in-law and had no intention to defraud. Mr. Vowell testified that there was no understanding or credit arrangement for him to hold the check or that the check would not be honored at the bank at that time. The mere fact that appellant could charge purchases has no relevance to the creation of a credit arrangement with a victim for payment of a check on which prosecution is based. (See *People* v. *Khan*, 41 Cal.App. 393 [182 P. 803].)

 Appellant further contends, without merit, that on the offer of Exhibit A the court asked the district attorney if he objected, which he did; the objection was sustained and by this action the trial court improperly used "applied psychology" in that the court was acting as prosecutor as well as judge. There was no error in the trial court's action.

 The appellant also offered Exhibits B and C which

had to do with an application for a bank loan and a copy of a conditional sales contract, respectively. The court refused to admit these documents, though in fact they had been previously admitted in the first trial. Appellant objected to the remarks of the judge who said, "That's right, by the other judge, but not by this court." Appellant contends that this statement changed the attitude of the jury towards the appellant. This is, at most, a statement of what happened, and shows no prejudice against appellant and is not even argumentative. Appellant also states that it was error on the part of the judge to make the statements and that he was actually conducting the prosecution by doing so. This situation is not the least bit comparable to appellant's citation of *People* v. *Robinson,* 179 Cal.App.2d 624, 637 [4 Cal.Rptr. 50], where in that case the court actually participated extensively in the examination and cross-examination of the witnesses.

While the defendant is entitled as a matter of right to introduce evidence in support of any legitimate defense (*People* v. *Jones,* 184 Cal.App.2d 464, 474 [7 Cal.Rptr. 424]), these documents had nothing to do with the checks in question. There had already been a stipulation that the appellant had not made the checks but had only endorsed them, and the introduction of Exhibits B and C to show that the handwriting on the face of the checks was not that of appellant was unnecessary.

### Instructions

The appellant complains that he was not given time to study instructions but that the judge charged the jury within five minutes after giving appellant a copy of the instructions.

The record indicates that the district attorney gave appellant a copy of his instructions prior to the court's giving him all the instructions on the day the jury was charged and that the appellant admitted receiving them; that he had apparently gone over them as he stated that he had objection to one, "if it's given," this being CALJIC No. 424, Instruction No. 18, to which he wanted to add the words "with knowledge that the instrument is not genuine." This instruction needs no additions. Instruction No. 14, CALJIC No. 422, actually has within it the meaning that appellant desires.

The appellant gives no reasons or argument as to why he claims the court erred in not giving instruction No. 12 other

than to say that where there are two interpretations, this instruction should be given. Instruction No. 12 reads as follows:

"If the evidence, considered as a whole, leaves in the mind of the juror a reasonable doubt of the guilt of the accused, the juror should give the defendant the benefit of that doubt and vote 'not guilty.'

"If the evidence in this case (as to any particular count) is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt.

"You will note that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable.

"However, the law does not require proof to an absolute certainty before it becomes a juror's duty to vote for a verdict of 'guilty.' The law only requires that guilt should be proved to a moral certainty, and that the degree of proof shall be sufficient to convince an unprejudiced mind of the guilt of the accused beyond all reasonable doubt."

This was an instruction prepared by the court and was not requested by either the district attorney or the appellant, and in reality the court fully covered the matter by its instruction No. 10, which was a combination of CALJIC Numbers 24, 25, 26, 27 and 28, and the court's instruction No. 11 which included the reading of Penal Code section 1096 (see CALJIC No. 21) covering presumption of innocence and reasonable doubt, further adding that the burden of establishing the guilt is upon the People and that the defendant is presumed to be innocent. Thus, we find no error in the failure to give the above instruction as the other instructions given by the court covered the defendant's rights.

The court read an instruction, to wit, "In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence. Criminal intent is an intent to do something which the law forbids and designates as a crime, even though the person may not know that he is committing a crime or that his act is wrong." Then the court stated: "I want to withdraw that instruction, Mr. Head, I don't like that instruction I just read to you and I

want you to disregard it. Specifically I want you to disregard, 'Criminal intent is an intent to do something which the law forbids and designates as a crime, even though the person may not know that he is committing a crime or that his act is wrong.' ''

The appellant's objection apparently is that this conversation was directed to Mr. Head and not to the jury, and that in effect, the jury did not disregard this instruction. While Mr. Head, the district attorney, is mentioned by name, we see no error in this when the court was actually reading the instructions and made his subsequent remarks directly to the jury.

In *People* v. *Hewitt,* 198 Cal.App.2d 247 [18 Cal.Rptr. 5], at page 252, this instruction is discussed and even where given, it was held not to be reversible error, and we see that in the present case the court read the instruction but advised the jury to disregard it.

██ The next objection appellant has to the instructions is that there is repetition. Actually the court's instructions Numbers 16 (CALJIC No. 54-B), 17 (CALJIC No. 423), 18 (CALJIC No. 424) and 19 (CALJIC No. 425), set forth the elements of offenses and do not define "intent." The court's instruction No. 20 (CALJIC No. 426) defines the intent to defraud, while instruction No. 14 (CALJIC No. 422) defines the crime rather than the intent. Appellant claims the court merely repeated instructions on intent in different phrases. Instruction No. 21 (CALJIC No. 428) states that specific intent to defraud is required, and instruction No. 22 (CALJIC No. 427-A) does not define intent in any manner.

Thus, it can be concluded that the court fully and properly instructed the jury as to the required specific intent to defraud and that by withdrawing the instruction on general criminal intent the court scrupulously protected the appellant's rights. (*People* v. *Hewitt, supra,* 198 Cal.App.2d 247.)

*Was the Verdict Contrary to the Evidence?*

██ The appellant implies that he is not guilty because his credit was good and therefore he could cash any checks with Mr. Vowell, and that he had no intention to defraud in this matter because he did not know the checks were no good.

The officer who brought the appellant back from Oklahoma testified that the appellant told him that ''There was a woman

he didn't identify, said she would get the money for him. He stated this woman gave him the checks.'' In the cross-examination of this officer and on direct testimony, the appellant at no time made any effort to explain this statement nor did he state that he got the checks from any other person than his wife.

We think that there is sufficient circumstantial evidence to offset appellant's contention that there was no proof that he had knowledge that these checks were not genuine and that his intent to defraud was more than sufficiently brought out by the circumstantial evidence. ■■■ See *People* v. *Leon*, 163 Cal.App.2d 791, 793 [329 P.2d 996], and *People* v. *Haines*, 176 Cal.App.2d 41, 45 [1 Cal.Rptr. 41], which hold that an intent to defraud is a fact which may be inferred from the acts or admissions of the accused or from the surrounding circumstances.

■■■ *People* v. *Porter*, 99 Cal.App.2d 506 [222 P.2d 151], appears to be a case in which this same appellant was involved, which case is referred to in appellant's closing brief. This case is very similar in the facts to our present case in that the defendant therein claimed that he had no intent to defraud. But the jury obviously did not believe this testimony but did believe that of the prosecution because there was ample evidence to prove all the necessary elements of the crime, including intent to defraud. ■■■ Such matters as intent and knowledge may be proved by circumstantial evidence (*People* v. *Davis*, 176 Cal.App.2d 80, 84 [1 Cal.Rptr. 103]).

■■■ The jury was entitled to give weight to all the various circumstances and claims of the appellant and to consider appellant's sudden departure for Oklahoma, about which he voluntarily testified, and he cannot now complain that the respondent commented upon this in his brief.

We think that the prosecution did not fall short of proving the elements of the corpus delicti, did not throw the burden of proof on the appellant, and that the jury had more than ample evidence to decide that the appellant was guilty.

The appellant not being an attorney and filing his own briefs in propria persona, has mentioned many factors which we have discussed at greater length than would ordinarily be justified by their obvious lack of merit. We are convinced that there was no prejudicial error committed.

The purported appeal from the order denying a new trial is dismissed.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 28, 1963.